UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------------X
KENNETH RAMIREZ,

                              CIVIL ACTION NO.

                  Plaintiff,

     -against-                     **COMPLAINT**

THE COMMONWEALTH OF PENNSYLVANIA;
THE COMMONWEALTH OF PENNSYLVANIA d/b/a   Plaintiff Demands A
BUREAU OF JUVENILE JUSTICE SERVICES;     Trial by Jury
THE COMMONWEALTH OF PENNSYLVANIA d/b/a
YOUTH FORESTRY CAMP #2;
JEREMY KISTLER (*individually*);
ERIC LENNARTZ (*individually*);
CHRISTOPHER KIVAK (*individually*); and,
GREGORY SCHWARTZLANDER (*individually*).

                        Defendants.
------------------------------------------------------------------------X

     Plaintiff, Kenneth Ramirez, as and for his Complaint against the above Defendants

respectfully alleges upon information and belief as follows:

### NATURE OF THE CASE

1.   Plaintiff complains pursuant to his rights to freedom of speech under the First

Amendment of the Constitution of the United States, his Substantive and Procedural Due

Process Rights, 42 U.S.C. § 1983, his protection under the Pennsylvania Whistleblower

Statute 43 P.S. § 1421-1428, and for discrimination based on his race in violation of 42

U.S.C. § 1981.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction Pursuant to 42 U.S.C. §1983, 28 U.S.C. §1343(3) involving a deprivation of rights and under 28 U.S.C. §1331 involving a federal question or issue, and supplemental jurisdiction thereto.

3.   This action involves a Deprivation of Rights of a citizen, by a state actor, protected under the Due Process Clause of the Fourteenth Amendment involving a Deprivation of Rights under the First and Fourteenth Amendments as well as a question of federal law under the First and Fourteenth Amendments of the United States Constitution.

4.   Venue is proper in this district based upon the fact that Defendants' principal place of business within the County of Luzerne, Commonwealth of Pennsylvania, within the Middle District of Pennsylvania. Additionally, the events took place within the Middle District of Pennsylvania.

## PARTIES

5.   Plaintiff, KENNETH RAMIREZ (hereinafter also referred to as Plaintiff and "RAMIREZ") is a resident of the County of Monroe, in the Commonwealth of Pennsylvania.

6.   At all times material, Defendant Commonwealth of Pennsylvania hereinafter also referred to as Defendant and "Commonwealth") is a Commonwealth of Pennsylvania governmental entity.

7.   At all times material, Defendant Commonwealth of Pennsylvania operates the Pennsylvania Bureau of Juvenile Justice Services.

8.  At all times material Defendant Commonwealth, under the Bureau of Juvenile Justice Services operates Youth Forestry Camp #2 (hereinafter referred to as "YFC#2").

9.  At all times material YFC#2 is located at 85 Youth Forestry Lane, White Haven, PA 18661.

10.  At all times material YFC#2 has a government office located in Carbon County, Pennsylvania.

11.  At all times material, the Commonwealth of Pennsylvania does business as YFC#2.

12.  At all times material the Commonwealth of Pennsylvania does business as the Bureau of Juvenile Justice Services and as YFC#2.

13.  At all times material the Commonwealth of Pennsylvania, the Bureau of Juvenile Justice Services and YFC#2 are individual and joint employers of Plaintiff.

14.  At all times relevant Defendant JEREMY KISTLER (hereinafter referred to as Defendant and "KISTLER") was employed by Defendant COMMONWEALTH.

15.  Defendant KISTLER was employed as a Youth Development Aid Supervisor for Defendant COMMONWEALTH at Defendant COMMONWEALTH's YFC#2 location.

16.  At all times material, Defendant KISTLER held supervisory authority over Plaintiff.

17.  At all times material Defendant ERIC LENNARTZ (hereinafter referred to as Defendant and "LENNARTZ") was employed by Defendant COMMONWEALTH.

18.  At all times material, Defendant LENNARTZ was employed as a Youth Development Counselor Manager for Defendant COMMONWEALTH.

19.  At all times material, Defendant LENNARTZ held supervisory authority over Plaintiff.

20.  At all times material Christopher KIVAK (hereinafter referred to as Defendant and "KIVAK") was employed by Defendant COMMONWEALTH.

21.  At all times material, Defendant KIVAK was employed as a Youth Development Aid Supervisor for Defendant COMMONWEALTH.

22.  At all times material, Defendant KIVAK held supervisory authority over Plaintiff.

23.  At all times material, Defendant GREGORY SCHWARTZLANDER (hereinafter referred to as Defendant and "SCHWARTZLANDER") was employed by Defendant COMMONWEALTH.

24.  At all times material, Defendant SCHWARTZLANDER was employed as a Youth Development Counselor Supervisor for Defendant COMMONWEALTH.

25.  At all times material Defendant SCHWARTZLANDER held supervisory authority over Plaintiff.

## MATERIAL FACTS

1.   On or around October 21, 2018, Defendants COMMONWEALTH hired Plaintiff RAMIREZ, a bi-racial African American and Latino male to be a therapist at Defendants YFC#2 location.

2.   At all times material, Plaintiff Kenneth Ramirez also suffers from a disability.

3.   Plaintiff suffers from depression and anxiety and Defendants were at all times aware of Plaintiff's disability.

4.   Depression is persistent feeling of sadness and loss of interest that can interfere with an individual's daily functioning.

5.   Anxiety disorders cause individuals to have intense, excessive and persistent worry and fear about everyday situations.

6.   These symptoms interfere with Plaintiff's concentration, thinking, interpersonal communications, sleep patterns and other major life functions.

7.   Plaintiff is medicated as a result of his disability.

8.   At all times material, YFC#2 is a forestry camp run by the Bureau of Juvenile Services for the Commonwealth.

9.   YFC#2 operates as a juvenile detention and rehabilitative facility for juveniles who are convicted of breaking the laws of the Commonwealth of Pennsylvania.

10.  Plaintiff's duties at YFC#2 were to conduct therapy with the juveniles at the facility on a one-on-one basis to work with them and help rehabilitate them from the behavioral problems that they suffered, which resulted in them breaking the law.

11.  On or around January 2019, approximately three months into Plaintiff's employment, Plaintiff began to notice illegal conduct against the juveniles by other YFC#2 employees.

12.  Plaintiff became immensely distressed by the things that he witnessed.

13.  By means of example only and not to be construed as an exhaustive list, Plaintiff witnessed Defendant Kistler and other YFC#2 employees withhold meals from the juveniles if they determined that the s had "acted out."

14.  Plaintiff also witnessed the juveniles being exposed to mental and physical abuse on a near daily basis.

15.  In one instance, Plaintiff witnessed Defendant Kistler go into one of the juvenile's dormitory room and begin to scream obscene rap lyrics in the juveniles' face.

16.  After approximately three minutes of this, the juvenile got up from his desk chair to move to the opposite side of his room to escape the torture.

17.  At that time, Defendant Kistler physically restrained the juvenile, which is unlawful conduct because physical restraint when the juvenile was not being aggressive or a threat is unnecessary force.

18.  On another occasion, one of the juveniles at the facility was standing outside of the dining hall.    When the counselors at the facility asked the juvenile to stop and they addressed him, the juvenile responded in kind and answered the question.

19.  At that time, the counselors instructed the juvenile to go into the dining hall.

20.  When the juvenile turned to go into the dining hall, which he was instructed to do by Defendant COMMONWEALTH's employees, he was wrestled to the ground by the counselors.

21.  After three months of employment and witnessing the unnecessary force being used on the juveniles, Plaintiff contacted Child Line.

22.  Plaintiff, in his capacity as a therapist of this facility is a mandated reporter under the mandated reporting statute of Pennsylvania.

23.  According the mandated reporting statute, Plaintiff is required to report juvenile abuse to the Child Line hotline run by Defendant COMMONWEALTH.

24.  In the alternative, Plaintiff can also report unlawful conduct such as juvenile abuse to his supervisors.    However, if Plaintiff reports the abuse or unlawful conduct to his supervisors and they fail then report, Plaintiff must still report the abuse or unlawful conduct himself.

25.  On or around January 2019 after witnessing a number of juvenile abuse incidents, Plaintiff reached out to Juvenile Line to report the unlawful abuse of the s at YFC#2.

26.  Upon information and belief, Defendant Kistler, who is one of the employees at YFC#2 who was using excessive force and subjecting the s to mental and physical abuse is related to the Director of Child Line.    Upon information and belief, Defendant KISTLER'S father is the person in charge of Child Line for Defendant COMMONWEALTH.

27.  When a mandated reporter makes a report to Child Line, that report is typically anonymous and the reporter's name is not provided to the organization against whom the complaint is made.

28.  Almost immediately after Plaintiff reported, he was approached by Defendant SCHWARTLANDER and asked why he was making reports to Child Line about the abuse.

29.  Plaintiff explained that he was a mandated reporter and as a result he was compelled to report the unlawful conduct and abuse because he was compelled to do it by law in addition to the fact that Plaintiff was vehemently opposed to the conduct of the counselors at YFC#2.

30.  SCHWARTZLANDER then instructed Plaintiff via email that reports should be made internally to supervisors prior to reporting to Child Line so that the matters could be handled internally.

31.  Plaintiff explained that this was contrary to the law and that even if Plaintiff reported the unlawful conduct and abuse to his supervisors, he still had a duty to report to Child Line if his supervisors did not follow through and report the conduct.

32.  Plaintiff immediately knew that Defendant KISTLER'S father had reported to Defendants that Plaintiff had reported to Child Line.

33. In or around February 2019, Defendants instituted a campaign of retaliation against Plaintiff for exercising his rights as a mandated reporter and reporting the unlawful abuse of the s to Child Line.

34. Prior to Plaintiff's reports to Child Line, Plaintiff had three days a week that he worked in a closed room to conduct his therapy with the juveniles and complete the necessary reports and paperwork related to the therapy according to state mandated guidelines.

35. Plaintiff was able to use the therapy office to conduct the therapy to ensure that the confidentiality of the juveniles' related to the therapy was protected.

36. In or around February 2019 just after Plaintiff reported to Child Line in January 2019, Defendants reduced Plaintiff to one day per week in the therapy room.

37. In addition, Defendants then forced Plaintiff to work with the counselors to essentially watch the juveniles.

38. Even when Defendants were in compliance with one counselor per the number of juveniles, Plaintiff was still not permitted to go work on his therapy related duties.

39. At all times material, Defendant KISTLER was the counselor who was in charge of scheduling the therapists for their duties in the therapy room.

40. Defendant KISTLER was also one of the counselors that Plaintiff reported to Child Line for abuse.

41. Defendant KISTLER stopped scheduling Plaintiff in the therapy room in direct retaliation for Plaintiff calling Child Line and reporting Defendant KISTLER's abuse of the juveniles.

42. Plaintiff consistently asked if he could go to the therapy office to work on his therapy related case load when Defendants were in compliance and was consistently told "no."

43. However, other Caucasian therapists made reports to Child Line and were not similarly stripped of their duties and ability to use the therapy room like Plaintiff.

44. Defendants treated Plaintiff differently than his Caucasian counterparts who also made reports to Child Line, but were not similarly stripped of their therapy duties and responsibilities.

45. On one occasion, in or around June 2019, Defendants were in compliance with one therapist watching the juveniles.   Plaintiff asked Mr. Coleman, a Youth Development Aid for Defendants, who was observing the s if Mr. Coleman minded if Plaintiff went to the office to complete his reports and work on his therapy related duties.

46. Mr. Coleman told Plaintiff that was fine because he was in ratio.

47. Moments later, Defendant KIVAK came into the therapy room and said to Plaintiff, "you escaped."   Then Defendant KIVAK instructed Plaintiff to go back down with the counselor and watch the s and again refused to let Plaintiff complete his therapy related duties.

48. Plaintiff found this comment to be racially discriminatory since Defendant KIVAK is Caucasian and Plaintiff is bi-racial, Latino and African American.

49. Plaintiff exclaimed to Defendant KIVAK that he found this to be racially discriminatory because the term you escaped has connotations of slavery associated with its use.

50. In or around October 2019, after one of Plaintiff's many reports to Child Line, Defendant KISTLER was explaining to another staff member about a situation or altercation occurred between two of the juveniles housed at YFC#2.

51. During the demonstration and explanation, Defendant KISTLER pretended that Plaintiff was one of the juveniles in the scenario.

52. In doing so, Defendant KISTLER proceeded to assault Plaintiff.

53. Plaintiff immediately told Defendant KISTLER not to put his hands-on Plaintiff.

54. Just one day prior to this assault, Defendant KISTLER and another YFC#2 employee, Doleta, confronted Plaintiff about why Plaintiff continued to report Defendant KISTLER to Child Line.

55. Defendant KISTLER physically assaulted and attempted to humiliate Plaintiff by putting his hands on him.

56. Plaintiff then reported that Defendant KISTLER had put physically assaulted Plaintiff and that Plaintiff was objecting to this unwanted conduct.

57. Still, Defendants did nothing to investigate or to take appropriate remedial measures.

58. Throughout the rest of 2019, Defendants continued to interfere with Plaintiff's ability to use the therapy room and to complete his therapy related case load work in a confidential and protective environment for the juveniles.

59. In or around May 10, 2020, Plaintiff was in a staff meeting with Defendant KISTLER and Defendant LENNARTZ.

60. During that staff meeting Defendant LENNARTZ was discussing behavioral issues that were ongoing with one of the s at the facility.

61. During that meeting Plaintiff spoke up about the s behavior and explained that he felt that the juvenile was exhibiting behavioral issues as a result of the physical and mental abuse that the juveniles had to endure at the facility.

62. Joan McNulty, Plaintiff's colleague therapist at the facility had written an email about this same juvenile to Defendant SCHWARTZLANDER prior to this meeting.   In the email, Ms. McNulty explained that Defendants had been withholding meals from the juvenile.

63. Following that meeting, Defendant LENNARTZ asked Plaintiff to follow Defendant LENNARTZ to his office.   When Plaintiff and Defendant LENNARTZ entered the office, Defendant LENNARTZ verbally accosted Plaintiff about sticking up for the juvenile during the meeting.

64. Defendant LENNARTZ conduct was so outrageous and aggressive that the Christopher Orner, Defendant COMMONWEALTH'S Facility Director for YFC#2, came down to the office to make sure that everything was alright.

65. Plaintiff continued to contact Child Line throughout the course of his employment.

66. On each and every occasion, Defendants continued to keep Plaintiff from being able to complete his therapy related duties.

67. In or around June 2020, Plaintiff made his final report to Juvenile Line.

68. Plaintiff explained to Defendants that he was continuing to suffer from his disability of stress and anxiety.

69. Defendants did not offer Plaintiff any accommodation, nor did they stop the retaliation by allowing Plaintiff to go back to his normal therapy schedule with the s to complete his work.

70.  Rather, Defendants told Plaintiff that he could take disability leave.

71.  At this point, Plaintiff returned to therapy, though he had not had to treat for his depression or anxiety for approximately ten years.

72.  As Plaintiff returned to therapy he was diagnosed with not only depression and anxiety, but also with post-traumatic stress disorder.

73.  Post traumatic stress disorder is a mental health condition that is triggered by a terrifying event either experiencing it or witnessing it.

74.  Symptoms of post traumatic stress disorder may include flashbacks, nightmares, and severe anxiety, as well as uncontrollable thoughts about the event.

75.  Plaintiff suffered from severe anxiety as well as flashbacks.   Plaintiff had a flashback to the juvenile abuse he witnessed at YFC#2.

76.  On or around July 2020, Plaintiff went out on disability leave because of the exacerbating symptoms related to his disability.

77.  Plaintiff remained out of work for approximately two weeks.

78.  When it was time for Plaintiff to return, he explained that he could no longer continue working at that facility as a result of Defendants unlawful conduct, retaliation, and failure to take any remedial measure with respect to Defendant KISTLER or the other counselors that Plaintiff had reported to Child Line.

79.  Rather than investigate or to take appropriate remedial measures, Defendants offered Plaintiff to switch positions.

80.  Defendants offered Plaintiff nine options of other available positions.   Eight out of nine of the positions were PG levels below Plaintiff's current job grade, which would have amounted to a pay and benefits demotion.

81. The ninth position, which was a PG 7 level position, the same as the position Plaintiff held at YFC#2, was at White Haven Center, which was slated to be closed by Defendant COMMONWEALTH within two years.

82. Defendants only accommodation was for Plaintiff to take a demotion in position, or to leave the incessant and rampant retaliation at YFC#2 by taking a position at another facility that Defendants planned to close within three years.

83. Defendants never investigated Plaintiff's complaints to Child Line or took appropriate remedial measures against the individuals like Defendant KISTLER who were abusing the juveniles.

84. Plaintiff did take the position at the White Haven facility.   However, on or around Plaintiff's first week at the facility there was a Code Red situation for one of the adults in the psychiatric facility.

85. This caused Plaintiff to have an anxiety attack and flashbacks to the abuse he witnessed at YFC#2 and again exacerbated his post- traumatic stress disorder.

86. On or around September 1, 2020, Plaintiff was constructively terminated from his position with Defendants.

87. Not only did Defendants at all times fail to investigate Plaintiff's complaints to Child Line, upon information and belief, Defendant COMMONWEALTH rewarded Defendant KISTLER by offering him Plaintiff's former position as a therapist.

88. Defendants violated Plaintiff's due process rights and his right to freedom of speech by making reports to Child Line.

89. Defendants retaliated against Plaintiff as a result of Plaintiff reporting Defendant KISTLER'S and other YFC#2 employees' abuse of the juveniles.

90.  Defendants at all times failed to investigate Plaintiff's claims or take appropriate remedial measures.

91.  Defendants subjected Plaintiff to substantial retaliation, which exacerbated Plaintiff's disability.

92.  Defendants instituted a campaign of retaliation against Plaintiff for his reports, yet never instituted the same restrictions against Plaintiff's Caucasian co-workers who also made reports to Child Line.

93.  At all times Defendants discriminated against Plaintiff as a result of his race and retaliated against Plaintiff when he complained of the unlawful conduct both against Plaintiff himself and against the juveniles at YFC#2.

### AS A FIRST CAUSE OF ACTION FOR A VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FOURTEENTH AND FIRST AMENDMENTS OF THE UNITED STATES CONSTITUTION
### (against all Defendants)

94.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

95.  Plaintiff claims Defendants violated 42 U.S. § 1983, which states in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an

act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

96. The Fourteenth Amendment of the United States Constitution states in relevant part that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

97. Plaintiff's first cause of action arises under Substantive Due Process protection of the Fourteenth Amendment, which protects citizens from state action in violation of the protected speech under the First Amendment of the United States Constitution.

98. The directives of Defendants, acting under the color of state law, facially violated the First Amendment of the United States Constitution by instructing Plaintiff to cease and desist reporting to state regulatory agencies.

99. Actions taken by Defendants against Plaintiff violate the protection afforded by the First Amendment of the United States Constitution because it conditions employment on acceptance of content and viewpoint restrictions on otherwise available, protected free speech. The directives of the Defendants unconstitutionally burden the rights of Plaintiff to communicate his protected interest.

100. The conditions of Defendants directives are not narrowly tailored to serve any compelling government interest.

101.    The conditions of Defendants directives are not narrowly tailored to serve a

significant government interest.

102.    The directives of Defendants are vague and overly broad, in violation of the First

Amendment of the United States Constitution.

103.    Defendants also violated Plaintiff's Due Process Rights under Title VII of the

Civil Rights Act of 1964 through discriminating against Plaintiff on the basis of his race

and color and for retaliating against Plaintiff for protesting the discrimination.


**AS A SECOND CAUSE OF ACTION FOR A VIOLATION OF PLAINTIFF'S
PROCEDURAL DUE PROCESS RIGHTS UNDER THE FOURTEENTH
AMENDMENT OF THE UNITED STATES CONSTITUTION
(against all Defendants)**

104.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint.

105.    The Fourteenth Amendment of the United States Constitution states in relevant

part that "All persons born or naturalized in the United States, and subject to the

jurisdiction thereof, are citizens of the United States and of the State wherein they reside.

No State shall make or enforce any law which shall abridge the privileges or immunities

of citizens of the United States; nor shall any State deprive any person of life, liberty, or

property, without due process of law; nor deny to any person within its jurisdiction the

equal protection of the laws.

106.    Plaintiff's second cause of action arises under the Due Process Clause of the

Fourteenth Amendment of the United States Constitution.    Procedural Due Process

afforded by the Due Process Clause of the Fourteenth Amendment protect citizens from

the state or local government acting in a way that will deprive the citizen of a life, liberty

or property interest.   If state or local government acts in a way to deprive a citizen of a

life, liberty or property interest, the citizen is entitled to notice and an opportunity to be

heard.

## AS A THIRD CAUSE OF ACTION
## FOR A HOSTILE WORK ENVIRONMENT UNDER 42.U.S.C. § 1983
## (against all Defendants)

107.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint.

108.     Plaintiff claims Defendants violated 42 U.S. § 1983, which states in pertinent

part: Every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory or the District of Columbia, subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof

to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress, except that in any action brought against a judicial officer for an

act or omission taken in such officer's judicial capacity, injunctive relief shall not be

granted unless a declaratory decree was violated or declaratory relief was unavailable.

109.     The Fourteenth Amendment of the United States Constitution states in relevant

part that "All persons born or naturalized in the United States, and subject to the

jurisdiction thereof, are citizens of the United States and of the State wherein they reside.

No State shall make or enforce any law which shall abridge the privileges or immunities

of citizens of the United States; nor shall any State deprive any person of life, liberty, or

property, without due process of law; nor deny to any person within its jurisdiction the

equal protection of the laws.

110.     Plaintiff's first cause of action arises under Substantive Due Process protection of the Fourteenth Amendment, which protects citizens from state action in violation of the protected speech under the First Amendment of the United States Constitution.

111.     The directives of Defendants, acting under the color of state law, facially violated the First Amendment of the United States Constitution by instructing Plaintiff to cease and desist reporting to state regulatory agencies.

112.     Actions taken by Defendants against Plaintiff violate the protection afforded by the First Amendment of the United States Constitution because it conditions employment on acceptance of content and viewpoint restrictions on otherwise available, protected free speech. The directives of the Defendants unconstitutionally burden the rights of Plaintiff to communicate his protected interest.

113.     The conditions of Defendants directives are not narrowly tailored to serve any compelling government interest.

114.     The conditions of Defendants directives are not narrowly tailored to serve a significant government interest.

115.     The directives of Defendants are vague and overly broad, in violation of the First Amendment of the United States Constitution.

116.     Defendants also violated Plaintiff's Due Process Rights under Title VII of the Civil Rights Act of 1964 through discriminating against Plaintiff on the basis of his race.

117.     Defendants fostered a racially discriminatory and hostile work environment.

118.     Defendants at all times failed to investigate Plaintiff's complaints of discrimination or to take appropriate remedial measures.

119.    The conduct Plaintiff was subjected to was severe and pervasive including but not limited to not affording Plaintiff the ability to conduct his therapy related duties like his similarly situated Caucasian colleagues; Plaintiff suffered a physical assault at the hands of Defendants KISTLER; and, Plaintiff was constructively terminated and only provided one other position for relocation and that facility was due to close within two years.

120.    Defendants then promoted Defendant KISTLER, one of Plaintiff's harassers to Plaintiff's therapist position at YFC#2.

121.    Defendants have unlawfully discriminated against Stone because of his race and color and because he reported and complained or opposed the unlawful conduct of Defendants related to the above referenced protected classes.

122.    Plaintiff claims a continuous practice of discrimination and claims herein under the continuing violations doctrine.

123.     Defendants have exhibited a pattern and practice of discrimination and retaliation.

124.    Defendant owed a duty to Plaintiff to prevent harassment, discrimination and retaliation at the workplace and failed to discharge those duties.

125.    Plaintiff claims that he was additionally retaliated against as a result of his reporting the abuse of juveniles to Child Line.


**AS A FOURTH CAUSE OF ACTION**
**FOR A VIOLATION OF PLAINTIFF'S PROTECTION**
**UNDER THE PENNSYLVANIA WHISTEBLOWER ACT**

126.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this Complaint.

127.    Plaintiff brings an action against Defendants for a violation of 43 P.S. 1423(a) which states, "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because of the employee or person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste."

128.    Defendants diminished Plaintiff's duties, forced him to go to another facility that was closing within two years and constructively terminated Plaintiff for his reporting to appropriate state agencies in violation of the protection afforded under the Pennsylvania Whistleblower Act.

129.    Plaintiff makes a claim under all applicable sections of the Pennsylvania Whistleblower Act.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:   Philadelphia, Pennsylvania
         October 21, 2020

                                 DEREK SMITH LAW GROUP, PLLC
                                 *Attorneys for Plaintiffs*

By: _____
                                 Samuel C. Wilson, Esq.
                                 1835 Market Street, Suite 2950
                                 Philadelphia, Pennsylvania 19103
                                 (215) 391-4790